J-S22005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: L.P.R., A.Y.L.R., F.R.L.R., J.L.R., H.R., AND A.L.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: A.M.R.M., MOTHER | |
| | No. 1606 MDA 2015 |

Appeal from the Decree entered August 18, 2015,
in the Court of Common Pleas of Lancaster County,
Orphans' Court, at No(s): 458 of 2015
68 of 2015
69 of 2015
70 of 2015
71 of 2015
72 of 2015

BEFORE: MUNDY, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED MAY 24, 2016**

Appellant, A.R. ("Mother") appeals from the decrees involuntarily terminating her parental rights to six children, L.P.R., A.Y.L.R., F.R.L.R., J.L.R., H.R., and A.L.R., ("the Children") pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511 (a) and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

_____

[*] Retired Senior Judge assigned to the Superior Court.

In January 2007, Mother gave birth to her first child that is the subject of this appeal, L.P.R. The paternity of L.P.R. was never established.

In June 2010, the Lancaster County Children and Youth Social Service Agency ("the Agency") first came into contact with Mother when Mother gave birth to A.Y.L.R, the first of five children that Mother had with Father in a five year period.[1]  Both Mother and A.Y.L.R. tested positive for cocaine.

Mother moved to Philadelphia and, a year later, in September 2011, Mother gave birth to the parents' second child, F.R.L.R in Philadelphia. F.R.L.R. also had cocaine in his system when he was born.  F.R.L.R was released to Father in Lancaster and the Agency closed its file.

Seven months later, in April 2012, Mother returned to Lancaster and was living with Father and the children.  The Agency again opened its file on this family. Aware of Mother's significant untreated substance abuse issues, the Agency directed that Father was to ensure that Mother did not have any unsupervised contact with the children.

In August 2012, less than a year after giving birth to F.R.L.R., Mother gave birth to the parents' third child, J.L.R.  Again, Mother and her baby tested positive for cocaine.  J.L.R. was released to Father.

In January 2013, Mother reported that she had lied about going to Philadelphia, and had been living with Father the entire time, hiding

---

[1]Father's appeal of the decrees terminating his parental rights to the five children he had with Mother is discussed at 1605 MDA 2015.

whenever a caseworker came to the house. Father denied that Mother was living with him, told the Agency that he had moved to New Jersey, but would not provide an address. The Agency again closed its file.

In May 2013, Mother pled guilty to five counts of forgery and was sentenced to probation.

A year after the birth of J.L.R., in August 2013, Mother gave birth to the parents' fourth child, H.R. H.R. was born not only with cocaine in his system, but also prematurely.

The Agency then learned that Mother was back in Lancaster and that she and the five children were living with Father. Although the Agency had directed Father not to leave the children alone with Mother because she had significant untreated substance abuse issues, Father disregarded this directive and permitted Mother, who had not yet resolved her substance abuse issues, to care for the children when he went to work.

The Agency filed a Dependency Petition against the parents and on November 4, 2013, the court granted legal custody of the Children to the Agency, removed the Children from the care of the parents and placed them in foster care.

A year after the birth of J.L.R, in August 2014, Mother gave birth to the parents' fifth child, A.L.R. Although Mother admitted to taking cocaine during the first trimester of her pregnancy, neither she nor A.L.R. tested positive for cocaine at the time of the child's birth. The child, however, was

born prematurely and remained in the intensive care unit of the hospital for two and a half weeks.

Upon the Child's release from the hospital, the Agency filed a Dependency Petition for A.L.R. and the court granted legal custody of the Child to the Agency and placed the child in foster care with her siblings.

In an effort to reunify the Children with the parents, the Agency provided the parents with Family Service Plan ("FSP") objectives in order to resolve the issues that led to the removal of the Children from them. The parents, however, did little to address the issues that led to the removal of Children during the year in which the Children were in foster care and, consequently, the parents did not meaningfully comply with their FSP objectives. As a result, on November 24, 2014, the parents' permanency goal for the five oldest Children was changed to adoption. On February 9, 2015, the permanency goal for A.L.R. was changed to adoption.

On January 9, 2015, the Agency filed a Petition to Terminate Mother's Parental Rights ("TPR Petition") with regard to the five older children and on February 26, 2015, the Agency filed a TPR Petition with regard to the youngest child, A.L.R.

The Orphans' Court held evidentiary hearings on the Agency's TPR Petitions for the six children on July 13, 2015, and August 10, 2015. The

trial court granted the petitions on August 18, 2015. Mother appeals from the decrees.[2]

## ISSUE ON APPEAL

Mother raises the following issue on appeal:

> A. Whether the [orphans'] court erred in terminating Mother's parental rights?

Mother's Brief at 17.

## LEGAL ANALYSIS

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citation omitted). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* (citation omitted). We may not reverse, however, merely because the record would support a different result. *Id.* at 827.

_____

[2] In derogation of Pa.R.A.P. 341, Mother filed a single notice of appeal even though the Orphans' Court entered three separate decrees. However, because no one involved in these cases has objected, and the court addressed Mother's issue pertaining to each order, we do not find this procedural error fatal to Mother's appeal. *See Dong Uan Chen v. Saidi*, 100 A.3d 587, 589 n.1 (Pa. Super. 2014).

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

a) The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Our Courts have defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires

that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.* at 855 (internal citations omitted).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *Id.* (citation omitted).

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of 2511(a)(1). The Orphan's Court outlined the severity of Mother's drug addiction, its impact on her inability to care for the Children, her dishonesty about her drug addiction, and her unwillingness to obtain treatment:

> Mother has been a cocaine addict for years, and may well continue in that status, since she has not yet been able to maintain consistent sobriety. Four of her six children were born with the drug in their system. The fifth was born prematurely after Mother took cocaine during the first three months of her pregnancy. On a number of times she left her house to live on the street and be involved with the drug. Even after the

[C]hildren were placed in foster care, she was unable to control her addiction and tested positive at least twice. There were times, when she had no prior warning, that she refused to take a drug screen, and the court can only assume she knew she had something in her system that would trigger an unwanted result. She lied to Dr. Gransee about her drug use, with a bizarre story about holding a bag of cocaine. She has not completed her reunification plan, preferring rather to choose her own treatment providers, to withhold information from the Agency, and not to follow through on treatment. [Mother] was unsuccessfully discharged from two of the providers because of her lack of compliance and/or attendance at their programs. Even if she adheres to her current mental health treatment, [Mother] cannot complete it for at least six months, and the court believes that to be an unrealistically short estimate. She lives with a friend, in a house unsuitable for two adults and six children. The children have been in foster care for more than fifteen months. This situation fulfills the standard set forth in the adoption cited above.

**Opinion Sur Appeal**, dated 10/13/15, at 13.

The Orphan's Court further found that although the Agency made referrals for Mother to obtain the services to remedy the issues that led to the removal of the Children, Mother was unwilling to take advantage of those services and thus, failed to comply with her FSP objectives:

Both Father and Mother expressed displeasure that the Agency refused to accept their self-referred treatment programs as evidencing progress with their plans. Such a belief is unrealistic. The purpose of the plan is not to give the parents a tentative outline of tasks to perform simply for the sake of performance. The purpose is to provide remedial treatment and information to the parent[s] so that they can overcome the behavior which caused the removal of the children from their custody and thereby become fit and appropriate parents within a reasonable time. The parents in this case chose their own remedial avenues, without any knowledge that those avenues conformed to those the Agency considered appropriate and adequate for the needs of the case. The parenting program [to which the parties self-referred] might be lacking in information, or rigor, or

accuracy. It cannot be accepted by the Agency in place of a [personal parenting trainer] simply because it is titled "Parenting Program." The Court agrees with the Agency that sporadic attendance at self-referred programs does not constitute the completion of a service plan to justify the return of the [C]hildren to the home.

*Id*. at 14 - 15.

Additionally, the Orphan's Court did not find Mother's testimony to be credible:

The Court has witnessed the testimony of both Mother and Father and has found it to be non-credible. Mother lied repeatedly to the Agency and the Court. Father lied repeatedly to the Agency and the Court. The motivation of their lies was to place the [C]hildren in the custody of a cocaine-addicted mother.

*Id*. at 16.

Mother argues that the Agency "failed her in her attempts to work on her plan for reunification as testified to in the record." Mother's Brief at 23. According to Mother, "[t]he evidence suggests that the Agency ignored Mother's attempts to contact and cooperate and work on her plan. The caseworkers refused to make referrals. Mother repeatedly testified to her own efforts to get into counseling, therapy, and parenting." *Id.*

Mother further asserts that the record is devoid of any testimony that her self-referring was unacceptable or inadequate, and suggests that her efforts were not classified as such until the November 2014 hearing, more than a year after the Children were placed with the Agency.

We find that these arguments focus on the credibility of the witnesses, and we accept the trial court's determination that it found the testimony of

the caseworkers to be credible and Mother's testimony to be not credible. *In re M.G.*, *supra*.

Finally, Mother argues that the evidence was insufficient to terminate her parental rights under Section 2511(a)(8). *See* Mother's Brief at 23-26. Since we find that the Orphan's Court held that the Agency provided sufficient evidence pursuant to Section 2511(a)(1), we do not need to address the sufficiency of the evidence to establish the requirements of Section 2511(a)(8). *B.L.W.*, *supra*.

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(1).

## Termination Pursuant to 23 Pa.C.S.A. §2511(b)

We also agree with the Orphan Court's determination that the Agency met its burden under 23 Pa.C.S.A. 2511(b) and that terminating the Mother's parental rights is in the best interests of the Children.

In analyzing whether the Orphan's Court properly applied Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to whether it is in the child's best interest to sever the parental bond. In particular, section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are

- 11 -

involved in the inquiry into the needs and welfare of the child." In addition, the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the analysis of the impact of severing the parental bond necessarily depends on the circumstances of the particular case. *Id.* at 763.

Moreover, the trial court does not need a formal bonding evaluation to determine the impact that severing the parental bond will have on the child. It is sufficient for a social worker or a professional with similar expertise to opine on the impact that severing the bond will have on the child. *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012).

In the instant case, the Orphans' Court properly concluded that there is not a meaningful bond between Mother and the Children because Mother never consistently provided safety, stability or security for the Children, the Children are thriving in their foster homes, and while living with Father, they watched Mother take drugs or disappear:

> The testimony throughout this matter indicates that all of the Children are doing well in their foster homes. Striking to the [C]ourt was the testimony that the oldest child did not express concern that he could not be returned to his parents, but that he had concerns that he was not with his siblings. Five of these children have been separated from their parents since August of 2013. While they were still in Father's custody, they watched Mother take her drugs or disappear periodically into the street or another community. There was no stability for them in terms of

loving and consistent parents. [A.L.R.] has never lived with Father or Mother, having been placed in custody directly after her birth. All of the Children seem happy and healthy in their foster homes and are bonded to their foster parents. ***There is nothing in the record indicating a current strong bond between the Children and their parents.***

**Opinion Sur Appeal** at 16 (emphasis added).

The trial court also properly relied upon the expert testimony of Dr. Gransee that Mother puts cocaine above all else in her life and is unable to make a physical and emotional commitment to the Children and provide stability for the Children:

> The Court takes seriously Dr. Gransee's testimony [sic] in which he sees a repetitive harmful pattern in these people's relationship, Mother in putting cocaine above all else in her life and Father not being able to separate from mother, sober or not. [The Children] need the types of homes they now reside in, with stable parents and a stable environment. They need parents who do not present the model of drug use and lack of both physical and emotional commitment to them. They should not have to wait a period of at least six months or more to see if Mother is capable of remedying her problems or if Father is capable of placing Mother and her drug related difficulties in an appropriate perspective. Accordingly, the Court believes the best interest of [the Children] requires that Mother's and Father's parental rights be terminated and the [C]hildren be adopted by loving and committed families.

***Id***. at 16-17.

Mother argues that the Orphan's Court erred because the older children "had enjoyed the emotional support of [] Mother and had a bond with her which was maintained through visitation." Mother's Brief at 26. She further argues that the Agency presented no expert testimony regarding the bond that she has with her children, and notes Father's objection to the

caseworkers' "bonding testimony" on that basis. According to Mother, her bond with the children "was not directly addressed nor apparently considered an issue at all by the [orphans'] court." *Id.* at 27. Finally, Mother suggests that the Agency "purposefully" failed "to explore how the [C]hildren's might [sic] be affected or influenced by permanently separating them from" her. *Id.*

Our review of the record supports the Orphans' Court's determination. We disagree with Mother's arguments that are based upon her credibility. As discussed above, the trial court found Mother's testimony to be "non-credible" and we see no reason to disturb that finding. *In re M.G.*, *supra*.

Moreover, Mother presented no testimony or other evidence regarding the strength of her bond with any of the Children. Finally, contrary to her contention, the Orphan's Court may qualify a social worker as an expert pursuant to Pennsylvania Rule of Evidence 702, and this Court has held that social workers are qualified to provide expert opinions regarding the impact that severing a parental bond will have on a child. *In re K.M.*, *supra* at 791 (Pa. Super. 2012); *see also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 702.08[3] (2016 ed. LexisNexis Matthew Bender).

## CONCLUSION

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear

and convincing evidence that the court should terminate Mother's parental rights to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b).  Accordingly, we affirm.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016